THE CITY NATIONAL BANK OF GREENVILLE, S. C., v. COBB.

EQUITY—FRAUD—HUSBAND AND WIFE.—THE ASSIGNEE of a note given by the husband to a contractor for building material, who had constructive notice that title to the lot was in the wife, and actual notice of insolvency of husband, cannot subject her house and lot to payment of the note, in the absence of fraud and connivance on the part of the wife, although she had knowledge of the transaction, and the lumber was used in adding to and increasing the value of her house.

Before GAGE, J., Greenville, September, 1899.    Affirmed.

Action in equity by the City National Bank of Greenville, S. C., against Abner Cobb and S. M. H. Cobb.    From Circuit decree, plaintiff appeals.

*Messrs. Haynesworth, Parker & Patterson,* for appellant, cite: *An insolvent cannot make a gift:* 5 Strob., 206; 27 S. C., 525; 35 S. C., 521.    *Where property has been expended by insolvent husband in improving wife's lands, such property may be subjected by creditors:* 90 A. D., 190; 5 A. St. R., 380; 2 S. E., 780; 31 S. E., 514.

*Messrs. Shuman & Dean,* contra, cite: *Creditor must take notice of recorded deed:* 54 S. C., 514; Bail. Eq., 6; 6 Rich. L., 437; Rich. Eq. Ca., 185; 34 S. C., 401.    *Husband had right to give labor to his wife*: 8 Rich. L., 50; 21 Sawyer's R., 623.    *But where wife is guilty of actual fraudulent intent, only property can be pursued:* 95 U. S., 3; 97 U. S., 304.    *And she must have value of property before improvement:* 167 U. S., 688.

July 16, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. Abner Cobb, while in the employ of Osborn Cagle (who was a contractor), was approached by Cagle with a proposition to advance him the material to enlarge the dwelling he occupied, being of two rooms, by adding four other rooms thereto. Cobb assented to the proposition, agreeing to pay money when he could, and pay from his wages when he could. Abner's codefendant, Mrs. S. H. M. Cobb, is his wife, and the mother of eleven children; she owns the land on which the house in which they reside is located. Her deed was dated in the year 1875 and recorded in the office of register of mesne conveyance in the year 1876. Her parents had lived on the land before it was conveyed to Mrs. Cobb by her mother. Abner Cobb paid, in money and work, to Osborn Cagle the sum of $275 in part payment of the sum of $500, which was the amount of the account between Abner Cobb and Osborn Cagle for the building material. Some time in 1898, Osborn Cagle induced Abner Cobb to give him his note at ninety days for the balance still due, to wit: $278.20, with interest, &c. This note was transferred for value before maturity to the plaintiff, The City National Bank of Greenville. Not being paid at maturity, the plaintiff bank recovered judgment thereon against Abner Cobb, but such judgment not having been paid, and Abner Cobb being insolvent, The City National Bank of Greenville has brought this action against the said Abner Cobb and his wife, Mrs. S. H. M. Cobb, as defendants, wherein, amongst other things, it recites the transactions of Cagle and Abner Cobb, but insists that Abner Cobb was insolvent when he made the arrangement with Osborn Cagle, who thought that he, Abner Cobb, held title to the one acre of land whereon the improved dwelling house was located; and besides that Mrs. Cobb knew of all these things. Wherefore the bank prayed that it might have judgment against Mrs. Cobb on the note, and also might have the land sold, if she failed to pay the note. It should have been stated that it was alleged and proved that the property had

been improved by the enlarged building at least to the sum of $400. Both the defendants answered, denying anything in the complaint which would lead to the relief plaintiff sought, alleging that Mrs. Cobb's title had been of record for twenty-five years before these transactions—of which fact Osborn Cagle was well acquainted, and that he had been informed by Abner Cobb at the time of the agreement that Mrs. Cobb declined to have any mortgage upon her property for this purpose, &c. The issues were referred to Master Verner, and he reported squarely against the plaintiff. Upon exceptions to the master's report, and on all the testimony and pleadings, the cause came on to be heard before his Honor, Judge Gage, who also decreed in favor of the defendants. This decree is so clear and convincing that it should be set out herein, and it is as follows: "This is an action to subject the real estate of the defendant, Mrs. S. H. M. Cobb, to the payment of a judgment in favor of plaintiff against the defendant, Abner Cobb. The cause was referred to the master, and his report and the testimony are in. The master found for the defendants, and the plaintiff excepts thereto upon fourteen grounds. Of these, eight grounds charge error of fact, five charge error of law, and one ground charges error of law and fact.

These facts are uncontested, to wit: Mrs. Cobb got the land by deed from her mother in 1875, and the deed was recorded in 1876; the husband and wife have lived on the land about twenty years and have reared a large family there; Cagle was a contractor and builder, and Cobb was a carpenter and foreman in his employ. During the latter months of 1896 and the first months of 1897, Cagle sold and delivered to the husband building material of the value of about $500. Mrs. Cobb "knew that lumber was (carried to her lot) from Cagle's, and that it had not been paid for;" the lumber and material was constructed into a house on the said land, and such house stands in the front of, but is joined to, and is now parcel of a small two-room dwelling in which the family had heretofore lived; as much as $40 was turned

over to the husband by the wife, and was paid by the husband to Cagle, at or before the delivery of the first lumber, and thereafter the husband paid Cagle in small amounts as much as $235 more; that the judgment of plaintiff is upon a note executed by the husband to Cagle for the unpaid balance due for said lumber and material, transferred by Cagle to plaintiff and by plaintiff sued to judgment. Cagle told the husband, 'he could use the note;' 'the lumber and material put in the house have increased the value of the premises $400;' the husband had no property when the contract for lumber was made, and he has none now; the house is located on a small parcel or lot of land containing one acre, more or less, in or near the corporate limits of the city of Greenville, and is now the residence of the husband and wife, and a large family of children.

The master has made some findings of fact which are not sustained by the testimony, to wit: 'It was agreed * * * that Abner Cobb should pay for (the material) by continuing to work for said Cagle as foreman-carpenter, and pay from his wages $5 to $10 and $15 per month.' The testimony of Cobb is this: 'He said he would furnish the material and I could pay him $5 to $10 or $15 per month.' Again, 'I pay along on the lumber every Saturday night when I worked.' Again, 'I did not continue to work and pay the amount because Cagle failed, and could not get any further.' The testimony of Cagle is this: 'He (Cobb) was to pay in work when he could and in money when he could.' It nowhere appears from Cobb's testimony that Cagle agreed to look exclusively to one source for payment, or that Cobb insisted on that. No such contract between them has been proved. On the other hand, it is not manifest that when the contract was made and the credit given to Abner, Cagle looked to and relied exclusively on Abner's ownership of the property. The categorical question was put to him: 'Had you known the title to be in any one other than himself, would you have given him this credit?' The answer is not correspondent to the question. The testimony of Abner

and Cagle is somewhat conflicting; Abner testifies he told Cagle, 'the land belonged to my wife.' Cagle testifies, 'Abner always spoke of the property as his place,' and 'he never did tell me that his wife owned the property.' The testimony of Abner Cobb's son, W. T. Cobb, is to the same effect as his father's. The burden is, by the pleadings, on the defendants to prove that Cagle had knowledge of the fact. Abner Cobb returned the property in his own name, paid the taxes on it; he was the owner of no other property. In the light of all the circumstances, I am of the opinion that Cagle did not have actual knowledge of the fact of the ownership by the wife, but I think he relied primarily for payment from sources available to Abner Cobb, and it is likely he looked in the last event to the property for payment. But how could this avail him, if he had constructive notice from the record of the deed? Had he loaned Abner $500 and taken a mortgage on the land from him, what would have been his plight? His present position is no better in the aspect now under consideration. The matter would be seriously changed if the testimony tended to show that Mrs. Cobb connived at what was done; but I am satisfied she is without moral wrong in the matter. She did nothing to mislead Cagle. The most serious question involved is this: If Cagle, in good faith, added $400 to the value of the property, for which he has not been paid, and which Mrs. Cobb permitted, and which she enjoys, ought not her property to pay therefor? On the other hand, it may be asked: Ought a creditor to be granted relief which may seriously affect the interests of a person who has taken no active steps to bring about a status, and when diligent inquiry could have protected him from loss? The small two-room house was turned around, the four-room house was built to and in front of it, the whole occupies one acre of land, and is inhabited by the family; the new cannot be severed from the old and leave matters as they were before, and a part of the new has been paid for. It is a case where equity even is powerless to do, under the forms of law, with a sword, what a Hebrew

mother volunteered to do. My judgment is, the complaint must be dismissed, and it is so ordered."

From this decree of Judge Gage the plaintiff now appeals on six grounds, to wit: "I. The Judge erred in holding that the house built by Abner Cobb out of the lumber purchased from Cagle could not be severed from the old house; whereas, the testimony shows that they were not connected together. II. He erred in holding that equity is powerless to grant relief to the plaintiff in the present case; whereas, he should have held that the land of Mrs. S. H. M. Cobb was liable to the plaintiff's debt to the extent that it had been enhanced in value by the erection of the improvements made with the lumber purchased from Cagle. III. He erred in holding that the plaintiff was in no better position than if Cagle had taken a note and mortgage for lumber sold Abner Cobb. IV. He erred in not holding that the use by Abner Cobb of the material purchased from Cagle to erect a dwelling house on his wife's land was in effect a gift to her of property which was liable in his hands to the payment of plaintiff's debt, and that Cobb being insolvent, the plaintiff was entitled to subject this property or building, in the erection of which it was used, to the payment of its debt. V. The Circuit Judge should have held that where an insolvent debtor employs property which would be liable in his own hands to the payment of his debts in the erection of buildings upon his wife's land, that the creditors are entitled to relief as against the wife to the extent that the said lands have been enhanced in value by reason of said improvements, and that the Court in such case should either direct the land to be sold, and out of the proceeds the debt, to the extent of this enhanced value, be paid, or else that the improvements should themselves be sold, and the proceeds of sale be applied to the payment of said debt. VI. He erred in not holding that the lumber which Cobb purchased of Cagle would have been liable in his hands to the payment of the debt, and that this having been used by him in erecting a building on his wife's land, and he being insolvent, the plaintiff was entitled

to subject the said land to the payment of its debt to the extent that the land had been enhanced in value."

The first exception is as to the fact found by the Circuit Judge, that the old two-room house was now connected with the new four-room house. This depends on what effect the testimony has on the mind; it impresses us, as it has the Circuit Judge—but it is of no great moment, one way or the other. The exception is overruled.

The next five exceptions, in one form or the other, appeal to the conscience of the Court in upholding the great principles of equity. We find as a fact that the title to this lot of land is in the defendant, Mrs. Cobb, alone; it was placed upon the records of the county for twenty-one years before the agreement between Osborn Cagle and the defendant, Abner Cobb, was made, and, therefore, the said Osborn Cagle was bound to take notice of this as a fact. Besides, three witnesses testify that he was told of the title being in Mrs. Cobb at the time of the agreement. We find as a fact that Mrs. Cobb was free from any fraudulent collusion with her husband, if any such thing as fraud existed in the heart of *any one* connected with this whole affair, which we do not admit. We find as a fact that although her land was heightened in value, no blame or responsibility can attach to Mrs. Cobb therefor. We find as law that the husband is allowed to work honestly for his wife in the State of South Carolina, without incurring any blame in the eyes of the law or in equity, and thereby make a gift to her of his labor. We cannot agree that the law, or equity, will view with approval any endangering of the wife's estate, when she acted with perfect *bona fides,* as she did in these transactions, by anything the husband did, especially as the person with whom the husband dealt had perfect knowledge, in law at least, of her title to the land and of the insolvency of the husband. All the exceptions must be overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.